UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JENNY QUIROZ, et al.,<br><br>  Plaintiffs,<br><br>v.<br><br>ADS-MYERS, INC., et al.,<br><br>  Defendants. | Case No. 20-cv-01755-JD<br><br>**ORDER RE ARBITRATION AND FINDINGS OF FACT AND CONCLUSIONS OF LAW RE CONTRACT FORMATION** |

  Plaintiffs Jenny Quiroz and Brayan Martinez Barrios, on behalf of themselves and a putative class of similarly situated employees, have sued ADS-Myers, Inc., and its founder and chief executive officer, Karoline Myers (together, ADS), for claims under the Fair Labor Standards Act (FLSA), the California Labor Code, the Unfair Competition Law, and Private Attorneys General Act (PAGA). Dkt. No. 30 (Second Amended Complaint). ADS provides janitorial services, and Quiroz and Barrios are said to have worked for it in 2019.

  The Court denied a motion to dismiss directed at Barrios because fact disputes about his employment status were not suitable for decision in a pleadings motion. *See* Dkt No. 62. This order resolves ADS's motion to compel arbitration of Quiroz's non-PAGA claims. *See* Dkt. No. 32. ADS says Quiroz agreed to arbitration in an employment contract she signed. Quiroz objects that an agreement to arbitrate was never formed because the contract she signed was illegible, and if an agreement was formed, it is unenforceable as unconscionable. *See* Dkt. No. 35.

  In response to the contract formation objection, the Court conducted a bench trial under Federal Rule of Civil Procedure 52 and the Federal Arbitration Act (FAA), which mandates that, when the "making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed summarily to the trial thereof." 9 U.S.C. § 4; *see also*

Dkt. No. 39. The sole issue for trial was whether Quiroz and ADS entered into a binding arbitration agreement, with a focus on the legibility of the contract between the parties. The Court heard testimony from four witnesses, including Quiroz and Myers, and received documents into evidence.

After consideration of the evidence and testimony at trial, and the parties' post-trial briefs, Dkt. No. 60 (ADS), Dkt. No. 61 (Quiroz), the Court concludes that a binding agreement to arbitrate was struck. The Court also concludes that the agreement is not unconscionable. Consequently, Quiroz and her non-PAGA claims are ordered to arbitration. The PAGA claim is stayed pending developments.

The parties did not address how an order compelling Quiroz to arbitrate her claims might affect the putative class for which she is a named plaintiff. The denial of the request to dismiss Barrios, the other named plaintiff, is an additional factor. The issue of the impact, if any, on the putative class will require resolution, but the Court declines to reach it now in light of the parties' failure to attend to it in the first instance. Pending further order, the order compelling arbitration applies at this time only to Quiroz herself.

## FINDINGS OF FACT

Because the existence *vel non* of an agreement to arbitrate is the essential predicate of a motion to compel arbitration, the Court begins with the findings of fact and conclusions of law resulting from the bench trial. The following facts were proven at trial.[1]

1. Plaintiff Jenny Quiroz was hired by ADS in November 2018 to work as a janitor.

2. At that time, ADS required all new employees to sign an Applicant's Statement & Agreement when they were hired.

3. The agreement was a single-page document that contained an arbitration provision. The pertinent provisions in the agreement are most clearly stated in Exhibit 3, which is an unsigned copy of the agreement used in 2019 and authenticated by defendant Karoline Myers, the

---

[1] The Court cites the record only when it is of particular utility to do so. *See Norcia v. Samsung Telecomms. Am., LLC*, No. 14-CV-00582-JD, 2014 WL 4652332, at *1 n.2 (N.D. Cal. Sept. 18, 2014), *aff'd*, 845 F.3d 1279 (9th Cir. 2017).

founder and CEO of ADS.  Trial Transcript ("Tr."), Dkt. No. 59, at 35:19-36-13; Trial Exhibit ("Tr. Ex.") 3.

4. The agreement stated:

> I also acknowledge that the Company utilizes a system of alternative dispute resolution that involves binding arbitration to resolve all disputes that may arise out of the employment context. Because of the mutual benefits (such as reduced expense and increased efficiency) which private binding arbitration can provide both the Company and myself, both the Company and I agree that any claim, dispute, and/or controversy (including, but not limited to, any claims of discrimination and harassment, whether they be based on the California/Nevada Fair Employment Practices Act, Title VII of the Civil Rights Act of 1964, as amended, or any other State, local or federal laws or regulations) that either I or the Company (or its owners, directors, officers, managers, employees, agents, and parties affiliated with its employee benefit and health plans) may have against the other shall be submitted to and determined exclusively by binding arbitration under the Federal Arbitration Act, in conformity with the procedures of the California/Nevada Arbitration Act. This specifically includes any claim, dispute, or controversy, including class action claims, which would otherwise require or allow resort to any court or other governmental dispute resolution forum arising from, related to, or having any relationship or connection whatsoever with my seeking employment with, employment by, or other association with the Company, whether based on tort, contract, statutory, or equitable law, or otherwise. The sole exceptions to this mandatory arbitration provision are claims arising under the National Labor Relations Act which are brought before the National Labor Relations Board, claims for medical and disability benefits under Workers' Compensation, and Unemployment Compensation claims filed with the State. However, nothing herein shall prevent me from filing and pursuing administrative proceedings only before the U.S. Equal Opportunity Commission or an equivalent State agency.

Tr. Ex. 3.

5. The agreement stated in bolded and all-caps typeface: "I UNDERSTAND THAT BY VOLUNTARILY AGREEING TO THIS BINDING ARBITRATION PROVISION, BOTH I AND THE COMPANY GIVE UP OUR RIGHTS TO TRIAL BY JURY OF ANY CLAIM I OR THE COMPANY MAY HAVE AGAINST EACH OTHER." *Id.*

6. The agreement also stated in italics just above the signature line: "*If you have any questions regarding this Statement, please ask a Company representative before signing.  I hereby acknowledge that I have read the above statements and understand the same.*"  *Id.*

3

1          7.      The very last line of agreement, immediately above the signature line, stated in bolded and all-caps typeface: "DO NOT SIGN UNTIL YOU HAVE READ THE ABOVE STATEMENT & AGREEMENT." Tr. Ex. 3.

           8.      Quiroz signed the agreement. Three copies of the agreement Quiroz signed were accepted into evidence: Trial Exhibit 1, Trial Exhibit 2, and Trial Exhibit 5 at 8. The agreements have different degrees of legibility. Trial Exhibit 1 is the least legible, and has a dark line running through the right side of the document. Trial Exhibit 2 and Trial Exhibit 5 at 8 appear to be the same document, and Quiroz identified Trial Exhibit 5 at 8 as the agreement she signed. Tr. at 86:4-7, 86:17-87:5.

           9.      The parties agreed that the original agreement signed by Quiroz was lost, and that all the exhibits were faxed copies.

           10.     Quiroz signed the agreement, along with other ADS employment documents, during a break while working at a night job. She met an ADS hiring representative in the parking lot, where it was dark. Quiroz was in a hurry to get back to work, and she signed the agreement and other documents without reading them. Tr. at 79:1-10; 81:2-11.

           11.     Quiroz signed the agreement even though she thought it was blurry and hard to read. Tr. at 83:24-84:3. When she signed, she did not tell the ADS hiring rep that she could not read the agreement, and did not tell another ADS representative later that she could not read it. Tr. at 86:8-10. Quiroz did not have vision problems, and her eyesight was good. Tr. at 87:12-22.

           12.     Quiroz testified in English and did not request a translator.

## CONCLUSIONS OF LAW

The existence of an agreement to arbitrate is the essential condition that must satisfied before arbitration may be compelled. *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986); *Kilgore v. KeyBank Nat'l Ass'n*, 718 F.3d 1052, 1058 (9th Cir. 2013). Consequently, although the FAA embodies a "national policy favoring arbitration," *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 346 (2011), there is no tilting of the scales toward arbitration until a binding agreement for it has been demonstrated. *See Norcia v. Samsung*

*Telecomms. Am., LLC*, No. 14-CV-00582-JD, 2014 WL 4652332, at *4 (N.D. Cal. Sept. 18, 2014) (and cases cited therein), *aff'd*, 845 F.3d 1279 (9th Cir. 2017).

To determine "whether a valid arbitration agreement exists, [the Court applies] ordinary state-law principles that govern the formation of contracts." *Id.* (internal quotation omitted and brackets added). Quiroz and ADS agree that California contract law applies. *See* Dkt. No. 60 at 6; Dkt. No. 61 at 6.

Under California law, "[t]here is no contract until there is mutual consent of the parties." *Norcia*, 2014 WL 4652332, at *4 (quoting *Deleon v. Verizon Wireless, LLC*, 207 Cal. App. 4th 800, 813 (2012)). "The mutual consent necessary to form a contract 'is determined under an objective standard applied to the outward manifestations or expressions of the parties, *i.e.*, the reasonable meaning of their words and acts, and not their unexpressed intentions or understandings.'" *Id.* (same internal quotation).

"[C]ompetent adults are bound . . . by documents, read or unread." *Id*. (internal quotation and citation omitted). A person who signs an employment contract "is deemed to know its terms whether she read them or not," *Smith v. SMX, LLC*, No. 18-CV-01903-JD, 2019 WL 720984, at *1 (N.D. Cal. Feb. 20, 2019). In particular, an "'arbitration clause within a contract may be binding on a party even if the party never actually read the clause.'" *Id.* (quoting *Pinnacle Museum Tower Ass'n v. Pinnacle Mkt. Dev. (US), LLC*, 55 Cal. 4th 223, 236 (2012)).

These well-established principles, along with the testimony and other evidence adduced at trial, make short work of the formation question. The record demonstrates that Quiroz signed an employment contract that contained a clause requiring arbitration of disputes. Even assuming that the original contract she signed looked like the faxed copy admitted into evidence -- which was not clearly established at trial and is an assumption in Quiroz's favor -- the text is sufficiently clear to the naked eye to be readable. The Court had little trouble reading it without visual enhancements of any sort, and Quiroz denied any vision problems. In addition, the key portions of the agreement advising Quiroz that she was consenting to arbitration and giving up the right to a jury trial were presented in bigger and bolder typeface than the rest of the document. So too for

the closing admonition to read the agreement before signing it. The acknowledgement that she had done so stood out in distinctively italicized typeface.

The record also demonstrates that Quiroz made no objection to the legibility of the contract at the time she signed it. She was perfectly free to express any concerns she might have had on that score before she signed, but did not do so. The same goes for handling the documents in a dark parking lot. Nothing prevented Quiroz from asking for a light, or moving to a location where she could find one. Quiroz rushed through signing the documents to get back to work, but as her testimony made clear, that was a voluntary decision on her part, and not something ADS did to her.

Consequently, the facts demonstrate that a binding arbitration agreement was made between Quiroz and ADS. Quiroz's effort to deflect that conclusion with materially different cases is misdirected. The cases she highlights, namely *Ramos v. Westlake Services*, 242 Cal. App. 4th 674 (2015), *Rosenthal v. Great Western Financial Securities Corp.*, 14 Cal. 4th 394 (1996), and *National Federation of the Blind v. The Container Store, Inc.*, 904 F.3d 70 (1st Cir. 2018), involved individuals with eyesight impairments and lack of competency in English. *See Ramos*, 242 Cal. App. 4th at 679; *Rosenthal*, 14 Cal. 4th at 427-429; *Nat'l Fed. of the Blind*, 904 F.3d at 83. Quiroz has normal vision, and she voluntarily testified at trial in English and without a translator. Nothing in the record indicates an inability to read a document in English.

Quiroz suggests that the ADS hiring representatives misrepresented or concealed the arbitration clause or the entire employment contract itself. *See* Dkt. No. 61 at 8-9. The record does not support that contention. Nothing in the testimony at trial indicated that an ADS representative did anything to dupe or confuse Quiroz, or deny her a fair opportunity to read and review the contract before signing it. To the contrary, the record shows that Quiroz voluntarily chose not to read through the documents. In addition, as Quiroz's own case citations make clear, ADS had no duty to spell out the terms of the contract and arbitration clause to her. *See Ramos*, 242 Cal. App. 4th at 686; *see also Jacobson v. Snap-on Tools Co.*, No. 15-CV-02141-JD, 2015 WL 8293164, at *3 (N.D. Cal. Dec. 9, 2015) (an employer is "'under no obligation to highlight the arbitration clause of its contract, nor [is] it required to specifically call that clause to [plaintiff's]

6

1   attention.'") (quoting *Sanchez v. Valencia Holding Co., LLC*, 61 Cal. 4th 899, 914 (2015)). The

2   decision not to read the contract before signing was her responsibility alone. *See Smith*, 2019 WL

3   720984, at *1.

## THE MOTION TO COMPEL

Since an agreement to arbitrate was formed, the question now is whether ADS is entitled to enforce it. The answer is yes.

The Court has detailed the strong presumption in favor of arbitration, including in situations of some doubt, in other decisions. *See, e.g., Martinez v. Ross Stores, Inc.*, No. 18-CV-04636-JD, 2019 WL 4221704, at *2 (N.D. Cal. Sept. 5, 2019); *McLellan v. Fitbit, Inc.*, No. 3:16-CV-00036-JD, 2018 WL 1913832, at *2 (N.D. Cal. Jan. 24, 2018). Those discussions are incorporated here. In pertinent part, the party asserting unconscionability as a defense to contract enforcement bears the burden of proof. *Martinez*, 2019 WL 4221704 at *2 (citing *Sanchez*, 61 Cal. 4th at 911). Under California law, "procedural and substantive unconscionability must both be present in order for a court to exercise its discretion to refuse to enforce a contract or clause under the doctrine of unconscionability. But they need not be present in the same degree . . . [T]he more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." *Id.* (internal quotation and citation omitted).

Quiroz does not contest these principles, and several of her arguments relating to unconscionability, such as not reading before signing, and not having the agreement explained to her, have already been addressed. Quiroz's unconscionability argument relies mainly on a recent California Supreme Court decision in *OTO, L.L.C. v. Kho*, 8 Cal. 5th 111, 125 (2019). *See* Dkt. No. 35 at 8-12. *Kho* involved an employee at a car dealership who was approached three years into his job by a "human resources 'porter'" and given just a few minutes to sign several documents. *Kho*, 8 Cal. 5th at 118. One of the documents included an arbitration agreement that was 51 lines long in small font, contained references to multiple federal and California state laws, and six different sections of the California Civil Code and Civil Procedure Code, allocated arbitration costs in a legally complicated manner, and required the employee to give up his rights

7

to a streamlined dispute procedure known as a "Berman hearing" before the California Labor Commissioner. *Id*. at 127-28.

While Quiroz points to some superficial similarities between *Kho* and her situation, the case is distinguishable in several key respects. To start, the arbitration clause in the agreement Quiroz signed was in smallish font, but it ran only 24 lines long, and the last three lines were a bolded and all-caps advisement of the arbitration agreement and waiver of a jury trial. It lacked the dense legalese of the agreement in *Kho*, and did not include a confusing allocation of costs, or impose costs on Quiroz that she would not otherwise bear by proceeding in a court. *See Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83,110-11 (2000) ("when an employer imposes mandatory arbitration as a condition of employment, the arbitration agreement or arbitration process cannot generally require the employee to bear any *type* of expense that the employee would not be required to bear if he or she were free to bring the action in court.") (emphasis in original). The ADS contract also advised Quiroz, in large print, not to sign before reading, which does not appear to have been true in *Kho*.

In another material distinction, the ADS contract did not expressly waive Quiroz's right to seek a Berman hearing before the Labor Commissioner. The agreement provided that Quiroz was free to pursue an action "before the U.S. Equal Opportunity Commission or an equivalent State agency." Tr. Ex. 5 at 8. While the outer boundary of that statement was not defined in the agreement, it does not on its face rule out a Berman hearing, and ADS represented in a brief that it was not intended to do so. *See* Dkt. No. 37 at 9. It also bears underscoring that "an arbitration agreement is not categorically unconscionable solely because it entails a waiver of the Berman procedure." *Kho*, 8 Cal. 5th at 118.

Overall, the circumstances here are not at all the same as the "oppressive" ones found in *Kho*, which featured "an unusually high degree of procedural unconscionability." *Id.* at 117. To be sure, the employment contract here, like most such agreements, had some indicia of inequal bargaining power, but Quiroz has not demonstrated that it was "imposed in such an unfair fashion and so unfairly one-sided that it should not be enforced." *Id*. at 124.

8

Quiroz's closing objection that only she signed the agreement is of no moment. "[T]he writing memorializing an arbitration agreement need not be signed by both parties in order to be upheld as a binding arbitration agreement." *Serafin v. Balco Properties Ltd., LLC*, 235 Cal. App. 4th 165, 176 (2015).

Consequently, Quiroz is obligated to arbitrate all her claims against ADS other than the PAGA claim. The parties agree, rightly, that the PAGA claim is not subject to arbitration. Quiroz's portion of the case is stayed and will be administratively closed pending arbitration. *See* 9 U.S.C. § 3; *Concepcion*, 563 U.S. at 333. The parties are directed to file joint status reports on the arbitration every 90 days pending further order.

**IT IS SO ORDERED.**

Dated: September 29, 2021

JAMES DONATO
United States District Judge